# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 23, 2012 Session

## REGINALD C. MALONE, SR. v. STATE OF TENNESSEE

**Appeal from the Circuit Court of Rutherford County**
**No. F64437      Robert E. Corlew, III, Judge**

---

**No. M2011-01033-CCA-R3-PC - Filed June 27, 2012**

---

Reginald C. Malone, Sr. ("the Petitioner") filed for post-conviction relief, challenging his conviction for the sale of 0.5 grams or more of cocaine, which resulted in a sentence of eight years in confinement. As his bases for relief, he alleged several grounds of ineffective assistance of counsel, a <u>Brady</u> violation, illegal evidence, and malicious prosecution. After an evidentiary hearing, the post-conviction court denied relief, and this appeal followed. On appeal, the Petitioner asserts that trial counsel was ineffective because he failed to challenge the discrepancy in the reports of the weight of the cocaine through either a motion to suppress the cocaine or cross-examination as to its chain of custody. Additionally, the Petitioner argues that trial counsel failed to file a timely motion for new trial. After a thorough review of the record and the applicable law, we remand the case for the trial court to grant the Petitioner leave to file a motion for new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Circuit Court Affirmed in Part,**
**Reversed in Part, and Remanded**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR. and D. KELLY THOMAS, JR., JJ., joined.

Kirk D. Catron (on appeal) and Derek Ray Howard (at hearing), Murfreesboro, Tennessee, for the appellant, Reginald C. Malone, Sr.

Robert E. Cooper, Jr., Attorney General & Reporter; Clark B. Thornton, Assistant Attorney General; and William C. Whitesell, Jr., District Attorney General; for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

A Rutherford County jury returned a guilty verdict for the Petitioner on one count of sale of 0.5 grams or more of cocaine. This Court stated the facts underlying the Petitioner's conviction as follows:

On February 13, 2006, at about 3:00 p.m., Detective Merrill Beene of the Murfreesboro Police Department met confidential informant (CI) Anthony Jones outside a Sleep Inn in Murfreesboro. Detective Beene planned to use Jones as the purchaser in a "controlled buy," in which a CI attempts to purchase drugs from a suspected dealer, reporting the results back to police. Detective Beene searched Jones' person, as well as his car, a white 1990 Nissan Maxima. Detective Beene found no contraband. He then issued $900 in previously photocopied bills to Jones and equipped Jones with a recording microphone.

At Det. Beene's request, Jones called the [Petitioner] and asked to buy an ounce of crack cocaine for $900. Jones asked the [Petitioner] to meet him at a nearby Shell station, at the intersection of Chaffin Place and Old Fort Parkway. The [Petitioner] agreed. Jones drove his car to the Shell station and waited for the [Petitioner].

Meanwhile, Lieutenant Nathan McDaniel of the Murfreesboro Police Department set up video surveillance from a concealed position near the Shell station. He recorded video of the subsequent transaction onto DVD, which the State played at trial. He also monitored the audio output for Jones' recording microphone. The resulting tape recording was also played at trial.

The camera recorded the [Petitioner] pulling into the Shell station in a brown Mercury sedan. Lieutenant McDaniel, using the car's license plate number as retrieved from the surveillance video, later confirmed that the car was registered to the [Petitioner]. The [Petitioner] exited his car and, after briefly entering the Shell station, got into Jones' car. Jones testified that the [Petitioner] then sat down, removing a bag of white rock substance and a set of digital scales from his coat. The [Petitioner] placed the scales on the center console and weighed the bag. Finding it to be of acceptable weight, Jones gave his $900 to the [Petitioner] and took the bag. After counting the money, the [Petitioner] exited the car. Video showed the [Petitioner] returning to his vehicle and driving away.

Jones returned to the Sleep Inn to meet Det. Beene. Detective Beene received the rock substance from Jones and sealed it into an evidence bag, recording the case number, the date, and his initials. He also paid Jones somewhere between $125 and $150 for his assistance. Detective Beene later sent this evidence bag to the Tennessee Bureau of Investigation (TBI) for analysis.

TBI Agent Donna Flowers, a forensic chemist, examined the contents of the evidence bag. She testified at trial that it contained 22.5 grams of cocaine base. The [Petitioner] did not testify at trial or offer any proof.

State v. Reginald C. Malone, No. M2008-02880-CCA-R3-CD, 2008 WL 4791525, at *1-2 (Tenn. Crim. App. Nov. 4, 2008), perm. app. denied (Tenn. April 27, 2009) (footnotes omitted).

The trial court sentenced the Petitioner to eight years in confinement to be served consecutively to a sentence on a prior conviction. The Petitioner filed a petition for error coram nobis prior to filing a motion for new trial. The trial court denied the coram nobis petition, entering final judgment on April 23, 2007. The Defendant then filed his motion for new trial on June 5, 2007. The Petitioner appealed both the conviction and the denial of coram nobis relief, and this Court consolidated the coram nobis appeal with the direct appeal. On appeal, this Court affirmed the Petitioner's conviction and the denial of coram nobis relief but reversed the trial court's decision that the sentence in this case should run consecutively to the prior sentence. Reginald C. Malone, 2008 WL 4791525, at *7. This Court also recognized that, because the motion for new trial had been filed in an untimely manner, this Court was precluded from considering all issues on the appeal of the conviction except for sufficiency of the evidence and sentencing. Id. at *4.

The Petitioner subsequently filed for post-conviction relief, and the post-conviction court dismissed the petition without a hearing. On appeal, this Court reversed the post-conviction court's dismissal and remanded the case for the appointment of counsel and an evidentiary hearing. Reginald C. Malone, Sr., v. State, No. M2009-01881-CCA-R3-PC, 2010 WL 22809, at *2 (Tenn. Crim. App. Jan. 4, 2010). The post-conviction hearing, which began on October 28, 2010, was continued on January 25, 2011 and concluded on April 8, 2011.

At the post-conviction hearing, the Petitioner testified that he first met with trial counsel on December 19, 2006. The next time he saw trial counsel was February 14, 2007. Up until this point, the Petitioner had not seen any of the discovery in the case. On February 14, 2007, trial counsel filed a motion for discovery. According to the Petitioner, the

Petitioner was in court on February 23, 2007, for a motions hearing, but there is no record to reflect that such a hearing occurred. The Petitioner stated that, at this hearing, the State offered to nolle all charges, and trial counsel "never responded nor stated anything. He just had a blank face." The Petitioner claimed that the court denied the State's offer and rescheduled the trial date. Sometime around the February court dates, the Petitioner noticed that the amount of cocaine to which Detective Beene testified at the preliminary hearing and the amount documented in the Tennessee Bureau of Investigation ("TBI") report did not match. Trial counsel never moved to suppress the cocaine or questioned anyone about the discrepancy in the amount of cocaine. According to the Petitioner, when he asked trial counsel why trial counsel was not bringing this discrepancy to light, trial counsel told him "it may damage the credibility of the officer. And at the time officers were having a bad enough time in the public."

The Petitioner stated that his two indictments were for sale of fifteen grams of cocaine and sale of twenty-seven grams of cocaine. However, after he was sentenced on the conviction for the sale of twenty-seven grams of cocaine, the State entered a *nolle prosequi* for the charge of sale of fifteen grams of cocaine. According to the Petitioner, his motion for new trial was to be filed by May 23, 2007, but trial counsel told the Petitioner that he had filed an extension that allowed them until June to file the motion for new trial. On June 5, 2007, trial counsel filed a motion for new trial and subsequently filed a motion to withdraw as counsel on June 28, 2007. The Petitioner stated that the trial court denied relief on the motion for new trial because the motion was not filed in a timely manner.

Agent Donna Flowers Jacobson, a forensic chemist in TBI's crime laboratory, testified that her job responsibilities entail analyzing substances brought into the lab and testing those substances for the presence of drugs. She confirmed that she tested the quantity of cocaine that was used as evidence at trial resulting in the Petitioner's conviction. The cocaine was a rocklike substance that weighed 22.5 grams when Agent Jacobson tested it in July, but she approximated that 0.1 to 0.3 grams might have been destroyed in testing. Post-conviction counsel asked Agent Jacobson why the cocaine weighed 5 grams less when she weighed it than it did when the detective weighed the cocaine on the day of the sale. Agent Jacobson stated, "I'm not sure of what type of balance [Detective Beene] used. I'm not sure if he weighed it in the packaging. . . . And then sometimes also, if the crack cocaine is wet, then over time it can dry. It was submitted in February and tested in July." She testified that the TBI calibrates all of the office scales weekly in order to ensure accuracy and precision. She noted that, while she weighed the substance without any packaging, a Ziploc bag would weigh two grams, whereas a simple fold-over bag would weigh only one gram. Furthermore, Agent Jacobson explained that manufacturing cocaine requires heating and mixing with liquid and that, over time, the liquid can evaporate from the cocaine base. She stated that "if it were a large amount of cocaine and if there were a lot of liquid present and with a lengthy

period of time, then a significant amount would have evaporated." Agent Jacobson acknowledged that a five-month gap between acquisition of and the testing of the cocaine would be "a greater amount of time than is typical."

Lieutenant Alvin Baird testified that he has worked with the Murfreesboro Police Department ("MPD") for twenty-six years and that he has transported evidence for over fifteen years. As part of his job responsibilities, Lieutenant Baird receives packages of evidence to secure within the MPD's evidence vault. Additionally, he removes the evidence and transports it to the TBI laboratory upon request. Lieutenant Baird also testified that he does not open or tamper with the packaging of the evidence upon receipt, and placing evidence into and removing evidence from the vault requires two authorized individuals' keys and codes. The package of cocaine used as evidence in the Petitioner's conviction contained markings indicating that the evidence was checked out from the vault on February 16, 2006. However, TBI records indicated that the TBI received the package on February 22, 2006. At first, Lieutenant Baird could not account for the six-day time gap, but he was recalled to testify at a later date. At that time, he stated that during a three-year period, including the time when his department was in possession of the cocaine at issue, he served as spokesperson for the department. Moreover, occasionally during that time period, after he would request for personnel to prepare the paperwork on specific items of evidence for transportation to the TBI, "media would call and say that they're en route and want a statement on a story . . . , which delayed my trip." Because this happened on the day that he requested the evidence at issue in this case, the personnel dated the evidence as being removed from the vault on February 16, 2006, but Lieutenant Baird did not transport the evidence until February 22, 2006. However, he stated that, even though the evidence was marked as being removed six days before it was transported, the evidence remained secure in the evidence vault until the time of transportation.

Assistant District Attorney General Jennings Jones testified that he was the assigned prosecutor on this case through the trial. Post-conviction counsel asked General Jones about a picture taken by Detective Beene that was never entered into evidence. This picture depicted the cocaine at issue weighing 27.5 grams on a scale. General Jones responded that he tendered the picture to the defense in discovery under his "open file policy" and that trial counsel had the opportunity to enter the picture into evidence. General Jones decided not to use the picture because he found it unnecessary. Post-conviction counsel further asked, "if you have a picture showing purported crack cocaine that weighs 27 grams and TBI lab report" indicating 22.5 grams, "[w]hy would you use that as evidence to prosecute?" General Jones responded, "In order to present this case for trial, the State was required to prove certain elements of sale of cocaine. One, that the defendant sold cocaine, that it was cocaine, and that it was over the amount of 0.5 grams. I have a TBI lab result that says 22.5 grams. In order to prove my case, that's all I'm required to present." He testified that, in other

words, because he was prosecuting for possession with intent to sell more than 0.5 grams of cocaine , the five-gram discrepancy between 27.5 grams and 22.5 grams was insignificant.

Detective Merrill Beene, MPD, testified that he orchestrated a controlled buy with a confidential informant, Anthony Jones, to purchase crack cocaine from the Petitioner. Jones made three controlled buys from the Petitioner, but the Petitioner was charged with only two of those buys. On each of these occasions, Detective Beene would meet with Jones, search his person and his vehicle, provide previously photocopied money, and then follow Jones to and from the location of the buy. Once they returned to a predetermined location, Detective Beene would retrieve the cocaine, take it back to his office, set the cocaine on a scale, and take a picture of the cocaine on the scale. Detective Beene might have swabbed it or tested a sample to make sure it was cocaine and then sealed it in an envelope. When post-conviction counsel asked about the accuracy of the scales, Detective Beene stated, "It's field weight, so it's not accurate. It's not going to be on point. . . . It depends on if he just cooked the cocaine. If he just cooked the cocaine, it's going to be wet so it's always going to be heavier." Moreover, the scales used at the MPD field office are confiscated scales from prior drug cases that are not calibrated regularly. Regarding the cocaine that resulted in the Petitioner's conviction, Detective Beene said the cocaine was "just cooked." He stated that he knew it was "just cooked" because "[i]t was kind of wet, dark – usually a whole lot darker brown and stuff like that." Furthermore, Detective Beene was not surprised by the five-gram discrepancy in the weight because most sellers attempt to sell their cocaine wet in order to get more money from the sale.

Agent Jennifer Spivey testified that in 2006 she worked as a forensic technician within TBI's Nashville Crime Laboratory's receiving department. She was responsible for entering the data from incoming evidence into the lab's computer system. She did not recall that the package containing the cocaine at issue was damaged. Agent Spivey explained that, had the package contained any visible damage or sign of tampering, she would have noted it. To her knowledge, the package was in the same condition when she received it as it was when the detective first sealed the package.

Anthony Jones testified that, as a paid confidential informant, he helped Detective Beene in "over ten" controlled drug buys around the time he made the controlled buys with the Petitioner. On the occasion leading to the Petitioner's conviction, Jones called the Petitioner to buy an ounce of cocaine. Jones stated that, although an ounce of cocaine is twenty-eight grams, if the Petitioner weighed the cocaine in the car and it were twenty-two grams, Jones likely would have bought it anyway so that the Petitioner would not have become suspicious.

Trial counsel testified that, at the time of the post-conviction hearing, he had been employed with the Rutherford County Public Defender's office for about six years. He could not recall the Petitioner requesting that he file a motion to suppress the cocaine because he was "pretty sure [he] did everything [the Petitioner] asked [him] to do." His trial strategy was "to put as much doubt on the confidential informant" as possible. When post-conviction counsel asked whether trial counsel believed a five-gram discrepancy in the weight of the cocaine to be significant, trial counsel responded, "I guess five [grams] would be on the upper end of things where I would start considering that to be a problem."

Regarding the weight discrepancy of the cocaine, the post-conviction court found as follows:

> [T]here has been no evidence provided that anyone stole any part of the sample, nor was there evidence of anyone who had an opportunity to steal a portion of the cocaine evidence. [The Petitioner] speculated that a police sergeant or an evidence room technician may have taken a portion of the cocaine evidence. The Court does not find this explanation to be very plausible, and even so, would not merit in favor [of] excluding the evidence at trial, inasmuch as the remaining portion of the same would not have been compromised.

The post-conviction court further found as follows:

> [T]he cocaine in this case was dark in color at the time of its seizure and at the time of the field test, which was shown to indicate that the cocaine had recently been "cooked," or combined with a liquid in order to process the cocaine base into a rock formation. Testimony further shows that after a period of time the liquid that is present in the substance will begin to evaporate, making the substance porous in texture, white in color, and lighter in weight. This Court finds that the factors suggested by the State properly account for the discrepancy in the field weight of the cocaine and the T.B.I.'s tested weight from the time of seizure to the point of trial in this matter.

Accordingly, the post-conviction court found that trial counsel's failure to file a motion to suppress was "of no consequence" and, thus, not prejudicial to the Petitioner.

Regarding trial counsel's failure to file a timely motion for new trial, the post-conviction court stated, "Given the other findings the Court has made in the ruling above, it appears that the Motion for New Trial, if filed timely, would not have been further effective, and thus, the failure of [trial counsel] to timely file is not found to be prejudicial to [the

Petitioner]." Finally, the court determined that the State did not commit a Brady violation through its open file policy or possession of the photograph depicting the cocaine with a field weight of 27.6 grams. Thus, the post-conviction court denied the Petitioner's claim for post-conviction relief, and the Petitioner now appeals.

On appeal, the Petitioner asserts that he received ineffective assistance of counsel at trial because trial counsel failed to challenge the weight discrepancy of the cocaine and failed to file a timely motion for new trial.

## Analysis

### *Standard of Review*

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

### *Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[1] Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v.

---

[1] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688)). Our Supreme Court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)). When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Pylant, 263 S.W.3d at 869 (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)). "A reasonable probability of being found guilty of a lesser charge . . . satisfies the second prong of Strickland." Id.

<u>Trial Counsel's Failure to Challenge the Weight Discrepancy of the Cocaine</u>

The Petitioner first argues that trial counsel failed to challenge the cocaine's weight discrepancy, given the approximately five-gram difference between Detective Beene's reported weight of the cocaine upon initial acquisition and the TBI's reported weight of the cocaine several months later. The Petitioner asserts that trial counsel should have filed a motion to suppress the cocaine as evidence or should have elicited proof at trial about the chain of custody of the cocaine.

Looking first to the prejudice prong, the Petitioner must show by clear and convincing evidence that, even if deficient, trial counsel's actions also prejudiced the Petitioner. Several witnesses gave testimony as to possible reasons for the weight discrepancy. The evidence established that on the date Detective Beene acquired the cocaine, the cocaine weighed 27.5 grams according to MPD's scales. However, the TBI report indicated that the cocaine weighed 22.5 grams when weighed by the TBI several months after the detective initially weighed the cocaine. Detective Beene testified that the scales used by MPD are scales acquired from previous controlled drug buys and are not calibrated regularly. On the other hand, Agent Jacobson stated that the TBI calibrated its scales weekly to ensure accuracy and precision. Additionally, Detective Beene weighed the cocaine in a plastic bag, whereas Agent Jacobson weighed the cocaine by itself. Finally, Detective Beene testified that the cocaine seemed to be "just cooked" when he weighed it, given his observations that the cocaine was a darker color and had fewer holes in it. He explained that, as cocaine dries it becomes increasingly more white and porous and that the liquid evaporates, making the cocaine lighter over time. Moreover, the Petitioner has not demonstrated how this discrepancy is material given that the charge was the sale of over 0.5 grams and the difference in weight is between 27.5 grams and 22.5 grams. Thus, the Petitioner has failed to show by clear and convincing evidence that but for trial counsel's failure to challenge the weight discrepancy of the cocaine, "the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). Accordingly, we need not determine whether trial counsel was deficient in not challenging the weight discrepancy of

the cocaine through the filing of a motion to suppress or his cross-examination of the State's witnesses at trial. Therefore, we hold that the Petitioner is not entitled to relief on this issue.

Trial Counsel's Failure to File a Timely Motion for New Trial

The Petitioner asserts that he was denied effective assistance of counsel because trial counsel failed to file a timely motion for new trial. The State concedes that trial counsel's failure to file a motion for new trial in a timely manner was deficient. However, the State contends that trial counsel's deficient performance did not prejudice the Petitioner.

Turning then to the prejudice prong, our Supreme Court has stated that, although the prejudice prong typically requires actual prejudice, "there is a small category of cases in which actual prejudice need not be shown." Wallace v. State, 121 S.W.3d 652, 657 (Tenn. 2003) (citations omitted). One such situation is "where counsel's performance is so deficient that it becomes presumptively prejudicial." Id. (citing United States v. Cronic, 466 U.S. 648, 658 (1984)). Moreover, "when 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing,' the process becomes 'presumptively unreliable' and proof of actual prejudice is not required." Id. (quoting Cronic, 466 U.S. at 659).

In Wallace, trial counsel failed to file a timely motion for new trial. Id. at 658. Although the petitioner still was able to raise the issue of sufficiency of the evidence on direct appeal, our Supreme Court determined that counsel's actions "resulted in the failure to preserve and pursue the available post-trial remedies and the complete failure to subject the State to the adversarial appellate process." Id. However, our Supreme Court expressly determined not to create a *per se* rule regarding the failure of trial counsel to file a timely motion for new trial. Id. at 659. Rather, "a petitioner in a post-conviction proceeding must establish that he or she intended to file a motion for new trial and that but for the deficient representation of counsel, a motion for new trial would have been filed raising issues in addition to sufficiency of the evidence." Id.

In the case before us, the Petitioner testified that he discussed the motion for new trial with trial counsel. According to the Petitioner, on one occasion, trial counsel told the Petitioner that trial counsel had been granted more time to file the motion than the allotted thirty days. Thus, based on the Petitioner's testimony and the fact that trial counsel filed a motion for new trial, albeit untimely, the evidence establishes that the Petitioner desired to file a motion for new trial. Moreover, in the Petitioner's untimely motion for new trial, the Petitioner raised several issues other than sufficiency of the evidence, including the issue regarding the chain of custody and weight discrepancy of the cocaine. Thus, we need not determine whether the Petitioner established whether the result of the proceeding "would have been different but for the deficiencies of counsel" because trial counsel's failure to file

-11-

a timely motion for new trial in this case was presumptively prejudicial. Wallace, 121 S.W.3d at 657; see also Turner v. State, No. M2008–00372-CCA-R3-PC, 2009 WL 1175116, at *5-6 (Tenn. Crim. App. May 1, 2009) (granting post-conviction relief when it was clear that the petitioner intended to file a motion for new trial, asserting issues other than sufficiency of the evidence and sentencing, and that trial counsel failed to do so).

Therefore, based on trial counsel's deficient representation and presumptive prejudice, the Petitioner is entitled to relief. Tennessee Code Annotated section 40-30-113(a)(2)-(3) provides that "[w]hen the trial judge . . . finds that the petitioner was denied the right to an appeal in violation of the Constitution of the United States or the Constitution of Tennessee," the trial judge may "grant a delayed appeal" or "[i]f no motion for a new trial was filed in the original proceeding, authorize a motion to be made before the original trial court within thirty (30) days." See also Byington v. State, No. E2006-01712-CCA-R3-PC, 2007 WL 4167812, at *5 (Tenn. Crim. App. Nov. 26, 2007) (holding that, when trial counsel filed an untimely motion for new trial and the petitioner intended to challenge issues other than sentencing and sufficiency of the evidence, the petitioner was entitled to post-conviction relief in the form of a delayed direct appeal).

Accordingly, we remand the Petitioner's case to the Circuit Court of Rutherford County and direct the trial court to enter an order allowing the Petitioner to file a motion for new trial in accordance with Tennessee Code Annotated section 40-30-113(a)(3). Upon a determination of that motion, the Petitioner may then file a delayed appeal with this Court in compliance with the Tennessee Rules of Appellate Procedure.

## Conclusion

For the foregoing reasons, we affirm the decision of the post-conviction court denying the Petitioner a new trial. However, we remand the case to the Circuit Court of Rutherford County and direct the court to enter an order allowing the Petitioner to file a motion for new trial. Thereafter, the Petitioner shall be permitted to file a delayed appeal.

_____
JEFFREY S. BIVINS, JUDGE